# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Case No. CR411-165 |
| | ) |
| OKEMI MONELL LAWTON | ) |

## **REPORT AND RECOMMENDATION**

Defendant Okemi Lawton moves to suppress all evidence resulting from a vehicle stop conducted by Savannah-Chatham Metropolitan Police Department officers. (Doc. 13.) He does not contest the propriety of the stop itself but argues that the subsequent search was constitutionally invalid, requiring the suppression of the pistol seized from his waistband. (*Id.* at 2.)

At the suppression hearing the government offered the testimony of Detective Glenn Castro and Officer Adina Nolte. Castro, a member of the police TRAP unit,[1] was traveling in an unmarked vehicle on April 5, 2011 when he received information from other investigators that the occupants of a silver Toyota Avalon were suspected of drug-related

---

[1] TRAP, an acronym for Tactical Response and Prevention, is a special unit that uses a proactive approach to narcotics and other forms of vice.

activity. Det. Castro and his partner began to tail the Avalon. At around 1:40 p.m., Castro observed the passenger in the Avalon quickly buckle his seatbelt as his vehicle approached a marked police cruiser traveling in the opposite direction on DeRenne Avenue. Castro radioed this information to nearby marked patrol cars working in tandem with the TRAP unit. Based on this report, Officer Nolte pulled her patrol vehicle behind the Avalon and activated her blue lights once it turned onto Skidaway Road. From his vantage point, Det. Castro observed the driver of the Avalon moving around in his vehicle as if trying to hide something. Castro reported the driver's furtive movements to Nolte before she approached the vehicle on foot.

When Officer Nolte reached the driver's door of the Avalon she knocked on the window, which prompted the driver (defendant Lawton) to open his car door. Nolte immediately detected the odor of fresh, unburnt marijuana emanating from the vehicle.[2] She asked Lawton if he had any weapons. Rather than answering her question, Lawton looked away momentarily and then began to pat both his thighs. Concerned for

---

[2] No marijuana was discovered during a subsequent search of the Avalon.

her own safety, Nolte placed her hands over Lawton's hands and had him step out of the vehicle. As he did so, Nolte patted Lawton's right side and immediately discovered a 9mm Taurus pistol tucked inside the waistband of his pants. Nolte placed Lawton in the back of her patrol car and determined through a database search that the pistol was stolen and that he had a felony record for murder or manslaughter. Lawton was then arrested and transported to the police station.

Lawton did not testify or offer any contrary evidence at the suppression hearing. The Court found the government's witnesses to be most believable and fully credits their unchallenged testimony. There was no violation of Lawton's Fourth Amendment rights on these facts.

The Supreme Court has recognized that even during a routine traffic stop -- where there is no specific reason to suspect that the driver is dangerous or engaged in any criminal activity other than a minor traffic infraction -- a police officer is nevertheless exposed to an "inordinate risk . . . as he approaches a person seated in an automobile." *Pennsylvania v. Mimms*, 434 U.S. 106, 110 (1977); *see Arizona v. Johnson*, 555 U.S. 323, 129 S. Ct. 781, 786-787 (2009). And the potential danger to police officers

inherent in every roadside stop "is likely to be greater when there are passengers in addition to the driver in the stopped car." *Maryland v. Wilson*, 519 U.S. 408, 414 (1997).³ Here, the normal concerns for officer safety arising from a traffic stop were enhanced by the officer's knowledge that the driver of the Avalon had been observed moving about in his vehicle in a manner consistent with hiding some object. Further, as soon as she encountered the driver Officer Nolte detected the recognizable odor of fresh marijuana coming from his vehicle. This observation not only gave her probable cause to search the vehicle, *see United States v. Tobin*, 923 F.2d 1506, 1512 (11th Cir. 1991) (en banc); *United States v. Lueck*, 678 F.2d 895, 903 (11th Cir. 1982), but furnished reasonable suspicion to believe that the occupants of the vehicle were engaged in criminal activity, thus warranting their investigatory detention. *See United States v. Griffin*, 109 F.3d 706, 708 (11th Cir. 1997). Further, because it is well

---

³ Accordingly, a police officer who lawfully stops a vehicle for a traffic infraction may "'routinely exercise unquestioned command'" of the potentially dangerous situation, *Wilson*, 519 U.S. at 414, by ordering both the driver and any passengers to exit their vehicle. *Mimms*, 434 U.S. at 109, 111 n.6 (officer may order the driver to get out of his vehicle even where he has "no reason to suspect foul play from the particular driver"); *Wilson*, 519 U.S. at 410 (the holding in *Mimms* "extends to passengers as well"). The "'legitimate and weighty'" interest in officer safety, *Wilson*, 519 U.S. at 412, outweighs such a "*de minimis*" intrusion upon either the driver's or passenger's liberty interests. *Mimms*, 434 U.S. at 111; *Wilson*, 519 U.S. at 415.

4

recognized that weapons have become "tools of the [drug] trade," *United States v. Ramsdale*, 61 F.3d 825, 829-30 (11th Cir. 1995), it was quite appropriate for Officer Nolte to ask the driver whether he had any weapons in his possession. Lawton's response to that question was to look away from the officer and then start patting his legs. Such ambiguous and bizarre behavior gave the officer "an objectively reasonable fear" that Lawton in fact *was* armed and presented a clear threat to her safety. *United States v. Bonds*, 829 F.2d 1072, 1075 (11th Cir. 1987).[4] Proceeding with a *Terry* frisk was a perfectly legitimate protective measure under these circumstances.

Once the officer discovered the pistol in Lawton's waistband, she was entitled to continue his investigative detention momentarily pending further inquiry. That brief investigation revealed that the weapon was stolen and that Lawton had a felony record. His ensuing arrest, therefore, was entirely proper and offended none of his constitutional rights.

As the pistol found in Lawton's waistband was seized during a

---

[4] The standard is an objective one: in frisk cases, "the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Terry v. Ohio*, 392 U.S. 1, 27 (1968).

lawful *Terry* frisk, his motion to suppress is without merit and should be **DENIED**.[5]

**SO REPORTED AND RECOMMENDED** this 30th day of August, 2011.

[signature]
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

---

[5] While Officer Nolte was transporting Lawton to the police station following his arrest, he indicated that he had not responded to the officer's question about whether he possessed a weapon because he was unsure what to say or do. Lawton's suppression motion did not assert that this statement was either involuntary or the product of police questioning initiated without the warnings required by *Miranda v. Arizona*, 384 U.S. 436 (1966). Nor did he develop the facts surrounding the making of this statement at the suppression hearing. The admissibility of this statement, therefore, has not been properly contested.